STATE ex rel. J. A. NICHOLS and Another v. GEORGE M. KIEWEL
and Others.[1]

May 2, 1902.

Nos. 13,081—(186).

### Constitution—Submission to Vote of Municipal Charter.

> Laws 1899, c. 351, § 4, as amended by Laws 1901, c. 323, providing
> for the submission of a proposed new charter of a municipality to the
> voters thereof for ratification at a general or special election, is constitu-
> tional.

Writ in the nature of quo warranto issued from the supreme
court upon the relation of the attorney general and J. A. Nichols,
a taxpayer of the city of Little Falls, requiring respondents, the
common council and officers of said city, to show by what right
they exercised their respective offices. Writ quashed.

*W. B. Douglas*, Attorney General, and *F. A. Lindbergh*, for re-
lators.

*E. F. Shaw* and *Lindbergh & Blanchard*, for respondents.

START, C. J.

This is a proceeding in the nature of quo warranto, on the rela-
tion of the attorney general, to oust the respective respondents
from the exercise of certain claimed corporate franchises under the
provisions of an alleged new charter of the city of Little Falls.

The admitted facts are these: The city of Little Falls was, and
still is, incorporated by virtue of Sp. Laws 1889, c. 8, unless pro-
ceedings taken under the provisions of Laws 1899, c. 351, as
amended by Laws 1901, c. 323, to frame and adopt such new char-
ter, are valid. In November, 1901, the judges of the judicial dis-
trict in which the city is situated, upon a proper petition, duly
appointed a board of fifteen freeholders to adopt a proposed char-
ter for the city. The board duly discharged that duty, and re-
turned such charter to the mayor of the city. Thereupon a special
election was called, and the charter was submitted to, and ratified
by, the qualified voters of the city, by the required majority. It

[1] Reported in 90 N. W. 160.

is by virtue of this new charter•that the respondents are exercising the franchise in question.

It is the contention of the relator that this charter was never legally ratified, because so much of Laws 1899, c. 351, as provides for the submission of the charter to the voters at a special election to be called for that purpose as therein provided, is unconstitutional. This is the sole question in this case. Section 36 of article 4 of the state constitution, known as the "Home Rule Amendment," authorizes any city or village of this state to frame a charter for its own government, which shall be submitted to the qualified voters of such municipality *"at the next election thereafter"*; that is, after it is returned by the board appointed to draft it to the chief magistrate of the municipality. The contention of the relator is that the words of the constitution which we have italicized mean the next regular municipal election, and that the words cannot be given any broader construction, so as to include special elections appointed, as provided by statute, for the purpose of voting upon a proposed charter.

This constitutional amendment requires the legislature to provide the necessary machinery for carrying its provisions into effect. It is not self-executing. In the discharge of this duty, Laws 1899, c. 351, was enacted; and by section 4 thereof, as amended, the legislature provided that such proposed charters might be submitted at either a general or special election. This was necessarily a legislative construction of the words of the constitution, "at the next election," and it appears from the records in the office of the secretary of state that eleven municipalities of the state have ratified new charters, or amendments to existing ones, at special elections. If it were absolutely clear that this legislative construction and municipal action were wrong, for the reason that the constitution requires all proposed charters to be submitted for ratification by the voters at the next regular municipal election after the return thereof to the chief magistrate of the municipality, it would be our duty to so declare, no matter what the results to public and private interests might be. But such interests do demand that we proceed with great caution, and sustain the statute unless completely satisfied that it violates the constitution. The question is

not free from doubt, but we are of the opinion that the constitutional mandate in question was intended, not to limit the power of the legislature to regulate the manner of submitting the charter, but to speed its submission; hence the provision that it must be submitted at the first election held after it is returned to such chief magistrate. If it had been the intention of the framers of this constitutional amendment to forbid the submission of a proposed charter at a special election, it is reasonable to assume that the intention would have been clearly expressed by using the words "at the next general municipal election thereafter," or some similar phrase.

It is a significant fact in this connection that the provision of the constitution relating to the submission to the electors of the state of a proposition for the constitutional convention expressly provides that it must be submitted at the next election for members of the legislature, and that, as to all other propositions which may be submitted to the electors, there is no constitutional requirement that they must be submitted at a general election. Const. art. 4, § 32a; art. 14, §§ 1, 2. Our conclusion is that Laws 1899, c. 351, § 4, as amended by Laws 1901, c. 323, is constitutional, and that the charter here in question was legally ratified.

Writ quashed.